# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JASON C. JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12CV00007 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,** [1] | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Robert S. Drum, Assistant Regional Counsel, and Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Jason C. Johnson filed this action challenging the final decision of

the Commissioner of Social Security (the "Commissioner") denying his claim for

disability insurance benefits and supplemental security income pursuant to Titles II

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

and XVI, respectively, of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-34 (West 2011 & Supp. 2013), 1381-83f (West 2012 & Supp. 2013).  Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Johnson protectively applied for benefits on July 26, 2007, alleging disability beginning March 1, 2007.  He met the insured status requirements through December 31, 2011.  His claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on June 12, 2009, at which Johnson, represented by counsel, testified.  The hearing was continued so that Johnson could submit updated records from a medical provider and undergo an additional evaluation.  A supplemental hearing was held on March 9, 2010, at which time Johnson and a vocational expert ("VE") testified. On April 1, 2010, the ALJ issued a decision finding that Johnson could perform a range of sedentary work with some restrictions, including certain jobs existing in significant numbers in the national economy, and thus was not disabled under the Act.  Johnson requested review by the Social Security Administration's Appeals Council.  The Appeals Council denied his request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Johnson then filed his Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is now ripe for decision.

II

Johnson claims disability due to club feet, status post multiple foot surgeries, gout, arthritis, knee pain, cervical strain, degenerative joint disease in the right shoulder, diabetes mellitus, hypertension, and depression.  He is a high school graduate with two years of college education and past relevant work as a customer service representative, caregiver, warehouse worker, and in various material management positions.  He was 32 years old on the date of the ALJ's decision, making him a younger individual under the regulations.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c) (2013).  The record indicates that Johnson has not engaged in substantial gainful activity since the alleged onset date.

The record contains notes from two medical examinations in March 2006, one year before Johnson's alleged disability onset date.  These documents reveal that Johnson suffered from arthritis, hypertension, and pain and weakness in his ankles and feet.  He had undergone several surgeries on his feet in his youth.  His medications included Glyburide for blood sugar, Diflusinal for pain, Allopurinol for gout, Metoprolol for blood pressure, and Benicar HCT for blood pressure.

In September 2007, Johnson was evaluated by Kevin Blackwell, D.O., at the request of the state agency.  Johnson reported that the deformities in his feet had caused him to adjust his gait, which created pain in his feet and hips.  According to Johnson, his condition had worsened significantly over the past year.  Johnson

reported that he had no other ongoing health concerns or problems. (R. at 266.)

Johnson reported that he was taking no medications at that time. Dr. Blackwell

noted an asymmetrical gait with slight limp and indicated that Johnson walked on

the sides of his feet and used a cane to stabilize himself. (R. at 268.) Dr.

Blackwell further observed soft tissue swelling along Johnson's right knee and

tenderness in both knees. (*Id.*) Dr. Blackwell opined that Johnson could lift up to

45 pounds maximally and 20 pounds frequently; sit for eight hours per eight-hour

day, assuming hourly positional changes; and stand for two hours per eight-hour

day, assuming positional changes every thirty minutes. (R. at 269.) According to

Dr. Blackwell, Johnson should not climb ladders or stairs, experience unprotected

heights, bend or stoop more than one third of the day, squat, or kneel. (*Id.*)

Robert McGuffin, M.D., completed a Physical Residual Functional Capacity

Assessment in October 2007. Dr. McGuffin opined that Johnson had described

significantly limited daily activities and despite ongoing treatment, continued to

have pain that had a substantial impact on his ability to perform work-related

activities. (R. at 278.) Dr. McGuffin opined that Johnson could occasionally lift

20 pounds and frequently lift ten pounds; could stand or walk for up to two hours

in an eight-hour workday; could sit for six hours in an eight-hour workday; and

could occasionally use ramps, balance, stoop, kneel, and crouch; but should never

climb and should avoid concentrated exposure to hazards such as machinery and heights.  (R. at 273-75.)

Johnson visited Stone Mountain Health Services in December 2007, January 2008, June 2008, and February 2009.  He sought treatment for weakness and pain in his feet and high blood pressure, and he reported in December 2007 that he was taking no medications.  (R. at 292.)  He was assessed with severe osteoarthritis, club foot, and hypertension.  (R. at 294.)  Jan Pijanowski, M.D., completed a form for the Wise County Department of Social Services on which he indicated that Johnson could not work full-time or part-time and "should be disabled, has severe disease."  (R. at 311.)  On this form, in addition to osteoarthritis and hypertension, Dr. Pijanowski assessed gout, weakness, and fatigue.  (*Id.*)  In December 2007, Johnson's uric acid level was above the normal range, but in March 2008, it was within the normal range.  (R. at 298, 296.)  Johnson was prescribed various medications for his ailments.  (R. at 289.)  Testing in February 2009 revealed elevated blood sugar and cholesterol and abnormal thyroid levels.  (R. at 310.)

At the direction of the state agency, medical consultant William Humphries, M.D., examined Johnson in March 2008.  Johnson described his history of club feet, past surgeries, and ongoing pain in his feet and ankles.  (R. at 279.)  He also reported experiencing gout attacks in the preceding year and a half.  (*Id.*)  According to Johnson, in the preceding six months, he had experienced about three

attacks, each lasting up to one month, and the gout attacks caused intermittent pain in his feet, knees, left wrist, and left elbow.  (*Id.*)  Other conditions included hypertension, hyperglycemia, bronchitis, and mild dyspnea on exertion.  (*Id.*) Johnson also described pain in his right shoulder resulting from a motor vehicle accident in 2001.  (R. at 280.)  He reported that he was currently taking Allopurinol, Benicar, Metoprolol, Darvocet, and Glyburide.  Johnson indicated that he typically consumed about six beers per week. (*Id.*)

Dr. Humphries noted a slightly reduced range of motion in Johnson's neck with mild tenderness.  (*Id.*)  Johnson's range of motion in his back was also slightly reduced, and straight leg raise was borderline positive on the left leg.  (*Id.*) Range of motion was slightly reduced in the right hip and in both ankles.  (R. at 281.)  Dr. Humphries observed severe synovial thickening in Johnson's ankle joints and moderately severe valgus deformity in the right ankle.  (*Id.*)  He further noted inward deviation of both feet, irregularity of the arches, severe prominence of the dorsal and first right metatarsal bones, irregularity and mal-alignment of most of the tarsal and metatarsal bones, congenital shortening of both feet, and severe calf muscle loss.  (*Id.*)  Dr. Humphries indicated that Johnson had difficulty maintaining his balance even with his eyes open, was unable to toe or heel walk, and could bear weight on each leg only briefly due to discomfort.  (*Id.*)  Dr. Humphries diagnosed Johnson with bilateral club feet, status post partial surgical

correction, with significant degenerative joint disease in both feet and ankles. (R. at 282.) He also diagnosed intermittent gouty arthritis, hypertension that was borderline controlled, chronic cervical strain, probable diabetes mellitus without insulin dependence, post-traumatic degenerative joint disease of the right shoulder, and dyspnea. (*Id.*) Dr. Humphries opined that Johnson would be limited to sitting six hours in an eight-hour workday; with appropriate orthotics and pain management modalities, standing and walking two hours in an eight-hour workday, lifting 25 pounds occasionally, and lifting 10 pounds frequently; and kneeling only occasionally. (*Id.*) Dr. Humphries indicated that Johnson should not climb or crawl and should avoid heights, hazards, and fumes. (*Id.*) He would also be unable to perform foot controls, operate a motor vehicle, or perform overhead work with his right upper extremity. (*Id.*)

At the initial hearing on June 12, 2009, Johnson testified that he lived by himself in an apartment on his parents' property. (R. at 56.) He had attended Clinch Valley College, Mountain Empire Community College, and a technical college for short periods of time, studying computer information technology, but had not obtained a degree. (R. at 59-60.) Johnson testified that he has always had pain in his feet. (R. at 68.) For a period of time, he worked full-time driving a stand-up forklift in a warehouse, but he was laid off from that job. (R. at 60-61, 63.) Johnson testified that his feet were not much better at that time than they are

now, but he managed the pain by working for a while and then taking off for a few months when the pain was severe.  (R. at 61.)  At one point, Johnson had a desk job for several months, but he left that job because he had a gout attack and could not drive to work.  (R. at 69-70.)  He began to pursue vocational rehabilitation in the fall of 2006, but he did not follow through with the inquiry because one of the doctors he visited opined that Johnson was disabled and should seek disability benefits instead.  (R. at 65.)  He had been working as the dairy department manager at Food City at the time, but he testified that he stopped working in early 2007 because he was having significant problems with gout.  (R. at 66, 68.)  He most recently worked up to four hours a day as a caretaker for his brother, who had cerebral palsy.  (R. at 70-72.)  Johnson testified that his gout flare-ups caused him to stop performing this work.  (R. at 74.)  Johnson described excruciating pain during gout flare-ups.  (R. at 93-94.)  According to Johnson, during a flare-up affecting his knees, hips, or ankles, he must use a cane or crutches to walk.  (R. at 95-96.)  Johnson also testified that he has very limited mobility in his right index finger.  (R. at 92.)

Johnson had not sought treatment from a rheumatologist or other specialist regarding his gout.  (R. at 76.)  Johnson testified that a lack of continuity in his medical care providers led to poor medication management; thus, the medications he was prescribed were not adjusted regularly and did not provide great relief.  (R.

at 79, 83.)  Johnson stated that he regularly walks about half an acre to his parents'

house and can ride a stationary bike for ten minutes at a time.  (R. at 86-88.)  He

lays down for 10 to 15 minutes approximately every hour to alleviate pain in his

lower back, knees, hips, and ankles.  (R. at 98.)

On August 31, 2009, at the request of the ALJ, Johnson was again evaluated

by Dr. Blackwell.  Based on this evaluation, Dr. Blackwell opined that Johnson

could sit for 6 hours in an eight-hour workday, assuming hourly positional

changes, and could stand for two hours out of an eight-hour workday, also

assuming hourly positional changes.  (R. at 327-28.)  Dr. Blackwell further found

that Johnson could operate a vehicle up to two-thirds of the day and could perform

overhead reaching activities with either arm up to one third of the day.  (*Id.*)  Dr.

Blackwell indicated that Johnson could perform stair stepping up to one third of

the day, and stooping, kneeling, and squatting up to one-third of the day.  (R. at

328.)  He should avoid ladder climbing, crouching, crawling, and unprotected

heights.  (*Id.*)  Dr. Blackwell opined that Johnson could frequently lift 15 pounds

and could occasionally lift 40 pounds.  In an attached medical assessment form,

Dr. Blackwell indicated that Johnson would be able to sit for one hour at a time

without interruption, to stand for one hour at a time without interruption, and to

walk for 20 minutes at a time.  (R. at 331.)

Johnson returned to Stone Mountain Health Services several times between his two ALJ hearings. Visit notes from July 7, 2009 assess chronic pain syndrome in addition to other impairments. (R. at 346.) Notes from September through November 2009 visits mention depression, which was noted to be improving. (R. at 342-43, 340.) Johnson was prescribed Prozac. (R. at 340.) On October 1, 2009, the treating physician speculated that Johnson was suffering from a gout attack of his right wrist and fingers. (*Id.*) The doctor ordered an assessment of Johnson's uric acid level and prescribed Indocin. The test results indicated that Johnson's uric acid level was within the normal range. (R. at 350.) Notes from a November 3, 2009, visit assess uncontrolled hypertension secondary to binge drinking, alcohol abuse, hyperglycemia, and depression. (R. at 337.)

Johnson again testified before the ALJ on March 9, 2010. Johnson denied that he had a binge drinking problem but admitted that he had been drinking more than usual in December 2009, following the death of his brother. (R. at 36-37.) Johnson stated that he was trying to stop drinking altogether. (R. at 38.) A VE then testified regarding jobs that would be available to a person with Johnson's limitations. The ALJ presented the VE with a hypothetical individual who had the limitations given in Dr. Blackwell's most recent assessment, as well as a moderate reduction in concentration due to depression and a limitation of only simple, non-complex tasks. (R. at 45-46.) The VE testified that such an individual could

provide a range of sedentary work, including machine monitor and unskilled clerical work, and that such positions exist in significant numbers regionally and nationally.  (R. at 46-47.)   When the ALJ added to the hypothetical excessive absenteeism due to gout attacks, the VE testified that missing more than two days of work per month would preclude an individual from maintaining competitive employment.  (R. at 47.)

The ALJ determined that Johnson had the severe impairments of gouty arthritis, bilateral club foot (congenital talipes equinovarus), status post multiple foot surgeries, cervical strain, degenerative joint disease of the right shoulder, hypertension, diabetes mellitus, alcohol abuse, and depression; however, she found that none of these severe impairments met or medically equaled a listed impairment.  The ALJ found that Johnson could not perform any of his past relevant work but had the residual functional capacity ("RFC") to perform sedentary work, limited to simple, non-complex tasks and the additional physical limitations specified in Dr. Blackwell's second assessment.  The ALJ concluded that because Johnson could perform certain unskilled sedentary jobs that existed in significant numbers in the national economy, he was not disabled under the Act.

Following the ALJ's decision, Johnson submitted additional evidence to the Appeals Council.  Johnson again visited Stone Mountain Health Services in March, July, and September 2010, and in March and November 2011.  On March 22,

2010, Johnson complained of dizziness, lightheadedness, and tingling in his face. (R. at 355.) Visit notes indicate weakness in the left arm but normal vital signs. (*Id.*) On July 12, 2010, Johnson complained that he was dizzy, nauseated, sweaty, and short of breath. (R. at 367.) Notes from this visit indicate shortness of breath, heart palpitations, depression, anxiety, high blood pressure, rapid heart rate, and shaking, though Johnson became visibly more relaxed during the visit and stopped shaking. (R. at 367-69.) On July 26, 2010, Johnson again sought treatment for anxiety related symptom. (R. at 389.) The assessment from this visit noted palpitations, depression, anxiety, diabetes mellitus, and hypothyroidism. (R. at 391.) Johnson returned on September 29, 2010, to follow up regarding hypothyroidism. (R. at 394.) Visit notes indicate that his fatigue and weakness were improved, as were his palpitations. (*Id.*) He used a cane, walked with a limp, and his left food turned inward at the ankle. (R. at 395.) The treating nurse practitioner assessed hypothyroidism, palpitations, and diabetes mellitus. (R. at 396.) March 2011 notes also indicate diabetes mellitus and hypothyroidism as well as hypertension. (R. at 401.) On November 9, 2011, Johnson complained of pain in his ankles at times. (R. at 409.) He was again assessed with diabetes mellitus and hypothyroidism, along with elevated lipids. (R. at 411.)

Johnson contends that the ALJ's decision is unsupported by substantial evidence because the ALJ failed to consider portions of Dr. Blackwell's second

assessment.   Johnson further argues that the ALJ failed to fully evaluate his allegations of disabling pain.   The Commissioner disagrees on both points and asserts that substantial evidence supports both the ALJ's RFC assessment and the ALJ's credibility determination with respect to Johnson's alleged pain.

### III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).   The standard for disability is strict.   The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013).  The fourth and fifth steps of the inquiry

require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

I must review the denial of benefits under the Act to ensure that the ALJ's findings of fact "are supported by substantial evidence and [that] the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted).

In this case, Johnson submitted additional evidence to the Appeals Council following the ALJ's decision, which the Appeals Council incorporated into the record. The Appeals Council, and this court, must consider new and material evidence submitted after the ALJ's decision that is relevant to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b) (2013); *see Wilkins*

*v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (holding that where Appeals Council considers additional evidence and incorporates it into the record, reviewing court must also consider the new evidence as part of the record.). This means that I must review the ALJ's decision in light of evidence that the ALJ never considered, *see Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999), while also refraining from making factual determinations, *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 471 (W.D. Va. 2010). Therefore, my review of the new evidence is limited to determining whether it "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (internal quotation marks and citations omitted). If the new evidence creates a conflict, then a remand is warranted so that the Commissioner can weigh and resolve the conflicting evidence. *Id.*

Johnson first contends that the ALJ considered only the narrative portion of Dr. Blackwell's second assessment and ignored the attached assessment form. Social Security Ruling ("SSR") 96-9p explains that certain nonexertional limitations are not relevant to a sedentary RFC because those conditions are rarely present in sedentary jobs. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996). Here, Johnson specifically takes issue with the fact that the ALJ's RFC assessment did not include limitations related to exposure to moving mechanical parts, humidity

and wetness, vibrations, extreme cold, extreme heat, and pulmonary irritants. These environmental limitations, however, are unlikely to come into play with respect to unskilled sedentary work. *Id.* at *9 (Environmental hazards "are considered unusual in unskilled sedentary work."). Similarly, postural limitations such as climbing, balancing, kneeling, crouching, and crawling "would not usually erode the occupational base for a full range of sedentary work significantly because those activities are not usually required in sedentary work." *Id.* at *7. Thus, the ALJ did not err in declining to include such limitations in her RFC assessment or in the hypotheticals she posed to the VE. The additional restrictions Johnson references simply were not relevant given his other physical limitations.

Johnson also contends that the ALJ erred in failing to explain why she disregarded portions of Dr. Humphries's assessment and Dr. Blackwell's initial assessment. These two assessments concluded that Johnson could perform a range of light work; thus, Dr. Blackwell and Dr. Humphries opined that Johnson had a greater exertional capacity than that ultimately found by the ALJ. The ALJ explained that she gave some weight to these assessments. Any error she may have committed in failing to explain why she did not afford them greater weight is harmless error, as the ALJ's ultimate RFC assessment described a more limited RFC than those described by Dr. Humphries and Dr. Blackwell.

Next, Johnson argues that the ALJ failed to properly consider his allegations of pain.  The determination of whether a claimant is disabled by pain or other subjective symptoms is a two-step process under the Act.  *See Craig v. Chater,* 76 F.3d 585, 594–95 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(b), (c), 416.929(b), (c) (2013).  First, there must be objective medical evidence showing the existence of an impairment that could reasonably be expected to produce the actual pain, in the amount and degree alleged by the claimant.  *See Craig,* 76 F.3d at 594–96.  If the existence of such an impairment is established, the ALJ then considers the intensity and persistence of the claimant's pain and the extent to which it affects the ability to work.  *See Id.,* 76 F.3d at 594–95.

Here, the ALJ found that Johnson's medically determinable impairments could reasonably be expected to cause pain.  However, she further found that Johnson's statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible.  She noted that he has received mostly routine and conservative treatment and has generally responded positively to treatment.  Moreover, she noted that his treating physicians had not referred him to a specialist.  Examining physicians opined that Johnson could perform a limited range of light work.  Additionally, while there was some evidence that Johnson suffers from gout, the record included several test results showing that Johnson's uric acid level was in the normal range; thus, the ALJ found the medical evidence

-17-

did not support Johnson's allegations about the severity and frequency of his gout attacks. The ALJ properly applied the two-step process for evaluating alleged pain, and substantial evidence supports her conclusion that Johnson's pain was not disabling. As noted above, credibility determinations are within the purview of the ALJ alone, and I must not reweigh the evidence or reassess Johnson's credibility.

Lastly, I find that the evidence submitted to the Appeals Council following the ALJ's decision is largely cumulative and does not create a conflict. Thus, this newly proffered evidence does not warrant a remand.

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence. The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   August 5, 2013

/s/  James P. Jones
United States District Judge